E-filed: 9/30/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN HARDWARE MUTUAL INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>JUAN ESCAMILLA INDIVIDUALLY AND DBA WILSON'S TIRE SERVICE and JULIE FIGUEROA, INCLUSIVE,<br><br>Defendants. | No. C-07-01545 RMW<br><br>ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**[Re Docket No. 70]** |

Plaintiff American Hardware Mutual Insurance Company ("American Hardware") seeks by its complaint a declaration that it has no financial obligation to defendants Juan Escamilla, individually and doing business as Wilson's Tire Service (collectively "Escamilla"), and Julie Figueroa under the "UNDERINSURED MOTORISTS" provision of the commercial garage insurance policy issued to Escamilla. American Hardware now moves for partial summary judgment that the automobile that caused the subject accident was not an underinsured vehicle and that Figueroa, the non-custodial mother of Matthew Escamilla, who was killed in the accident, has no standing to sue for bad faith. Defendants Escamilla and Figueroa oppose the motion and request that the court find in their favor on the subject legal issues. However, Escamilla and Figueroa have not cross-moved for partial summary judgment. The court has reviewed the papers and considered

the arguments of counsel. For the following reasons, the court grants the motion to the extent that it finds that the American Hardware policy had a "per accident" limit and that if that limit was $250,000, the vehicle causing the accident was not an "underinsured vehicle." The court denies the motion as to American Hardware's claim that Figueroa lacks standing to sue for bad faith.

## I. BACKGROUND[1]

Matthew Escamilla, the son of Juan Escamilla and Julie Figueroa, died in a car accident on the night of February 5, 2005. Matthew was one of four passengers in a Geo Prizm driven by Tomesina Uresti, who was seventeen years old, lacked a driver's license, and was intoxicated at the time of the accident. The Geo Prizm collided with another car, killing all five people in the Geo Prizm and injuring the four occupants of the other car.

The Geo Prizm was insured by an automobile liability policy issued by AAA with limits of $15,000 per person and $30,000 per accident. Uresti was covered by an automobile liability policy issued by State Farm with limits of $100,000 per person and $300,000 per accident. The four injured occupants of the car struck by the Uresti vehicle and the heirs of the four passengers killed in the Geo Prizm entered into a global settlement with Uresti and her liability carriers. The insurers exhausted the limits of the two applicable policies, paying $330,000 to the claimants, including $67,000 to Juan Escamilla and Julie Figueroa.

Juan Escamilla and Julie Figueroa, the divorced parents of Matthew, now seek compensation from American Hardware. Its policy covered Matthew as a "family member" of Escamilla, the custodial parent of Matthew. Escamilla and Figueroa contend that the policy's underinsured motorist coverage obligates American Hardware to pay them the difference between the $67,000 they recovered and the underinsured motorist coverage limit in the American Hardware policy. The parties dispute the limits of the policy's underinsured motorist coverage. American Hardware argues that Escamilla lowered his uninsured motorist coverage from $1,000,000 to $250,000, while

---

[1] The parties were unsuccessful in reaching a stipulation as to the relevant facts for the current motion although it previously appeared that they could do so. Unfortunately, a review of the papers in connection with this motion reflect some unprofessional hostility between counsel for American Hardware and Figueroa during the discovery process which may explain their inability to cooperatively put together an agreed-upon set of facts. Nevertheless, it appears that the facts necessary for resolution of the motion are undisputed.

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW

2

Escamilla argues that any reduction had not been implemented as of the date of the accident. The dispute as to the limit is not a subject of the current motion. The court, as do the parties, assumes for ease of discussion only, that the policy contains a $250,000 limit. If the limit is later determined to be $1,000,000, the analysis below will lead to a different result as to the triggering of underinsured motorist coverage.

American Hardware denies that the underinsured motorist coverage in its policy has been triggered and by the current motion seeks a declaration to that effect. American Hardware also disputes Figueroa's standing as a non-custodial, divorced parent of Matthew to sue for bad faith.

## II. THE POLICY'S UNDERINSURED MOTORIST PROVISION

### A. Comparison of Limits of Liability Policies Covering Loss With Underinsured Motorist Limits of American Hardware Policy

California law requires that all motor vehicle insurance policies provide underinsured motorist protection. Cal. Ins. Code § 11580.2(p)(7). Section 11580.2 is deemed to be "part of every uninsured and underinsured motorist policy." *Quintano v. Mercury Cas. Co.*, 11 Cal. 4th 1049, 1053 (1995). Subsection (m) of Cal. Ins. Code § 11580.2 requires that an uninsured endorsement include at least:

> (1) A limit of thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident.
>
> (2) Subject to the limit for one person set forth in paragraph (1) a limit of sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident.

Subsection (n) further requires that "[u]nderinsured motorist coverage shall be offered with *limits* equal to the *limits of liability* for the insured's uninsured motorist limits in the underlying policy, and may be offered with *limits* in excess of the uninsured motorist coverage." Cal. Ins. Code § 11580.2 (n)(emphasis added). The purpose of underinsured motorist coverage is "to provide additional coverage for the insured who is injured by a tortfeasor who has minimal liability insurance." *Explorer Ins. Co. v. Gonzalez*, 164 Cal. App. 4th 1258, 1262 (2008) (quoting *Quintano*, 11 Cal. 4th at 1053 (1995)). But the law is *not* intended to "provide full indemnification" to one injured by an underinsured motorist. *State Farm Mut. Auto. Ins. Co. v. Messinger*, 232 Cal. App. 3d 508, 520 (1991). On the contrary, the goal of underinsured motorist coverage in California is to "plac[e] the

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW
3

insured in the position he or she would have been in if the underinsured motorist had had liability coverage equal to the insured's underinsured motorist limits." *Id.* at 521. Thus, the "amount of the injured person's damages" and "the proceeds available to each injured person" are not relevant to determining whether underinsured motorist coverage applies. *Id.* All that matters is a "simple comparison" of the insurance policies' limits. *Explorer Ins.*, 164 Cal. App. 4th at 1264 (explaining *Messinger*, 233 Cal. App. 3d at 514).

But the parties in this case dispute how this "simple comparison" should be done. American Hardware contends that the underinsured limit in its policy is "per accident." The American Hardware policy defines an "Underinsured Motor vehicle as "a motor vehicle . . . for which the sum of all liability . . . policies at the time of an 'accident' provides at least the amounts required by applicable law . . . but that sum is less than the Limit of Insurance for this coverage." Law Decl., Ex. N at AH00123. The sum of the "per accident" limits of the AAA and State Farm policies is $330,000. Since the "per accident" limit of the American Hardware policy is $250,000 and thus less than the "per accident" the limits on the Uresti vehicle, American Hardware submits that the Uresti vehicle was not an "underinsured vehicle."

Escamilla and Figueroa contend that the $250,000 limit in the American Hardware policy must be compared to "per person" limits of the liability policies covering Uresti. Since section 11580.2 requires both a "per person" and "per accident" limit and the American Hardware policy does not have both, Escamilla and Figueroa argue that the one limit provided by the American Hardware policy must be considered a "per person" limit and not a "per accident" limit. Otherwise, they contend that they do not get the benefit of the two limits required by statute. They further argue that the American Hardware policy is ambiguous in that the "LIMIT OF INSURANCE" box on the first page of the uninsured motorist endorsement is not filled in with an "Each 'Accident'" limit" (Law Decl., Ex. N at AH00123) and that the declarations page indicating the limit does not clearly state it is a "per accident" limitation. *Id.* at AH100120. Therefore, Escamilla and Figueroa submit that the general rule favoring coverage applies. "[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted to protect the objectively reasonable expectations of the insured." *Bank of the West v. Sup. Ct.,* 2 Cal. 4th 1254, 1264-65 (1992). Finally, they claim that

nothing in the American Hardware policy tells the insured whether the "per person" or "per accident" liability coverage on a tortfeaor's vehicle is to be compared with American Hardware's single limit for determining underinsured motorist status. The reasonable expectation of an insured is consistent, according to defendants, with making the comparison between the tortfeasor's "per person" limit and the single limit. Therefore, in this case, Escamilla and Figueroa claim entitlement to the "per person" limit of $250,000 less the $67,000 that has been paid.

Whether American Hardware or Escamilla and Figueroa are correct depends upon interpretation of the American Hardware underinsured motorist endorsement. "An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (internal quotation marks omitted). Escamilla and Figueroa contend that the extent of underinsured motorist coverage is ambiguous as to whether the $250,000 limit is "per person" or "per accident" and that the comparison for determining whether the Uresti vehicle was underinsured must be made using the total of the liability "per person" limits of $115,000 for the Uresti vehicle and the $250,000 single limit in the American Hardware policy. Escamilla and Figueroa point to *Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640 (1998), in which the Wisconsin court of appeals held that the "per person" limit in the tortfeasor's policy had to be compared to the single "per accident" limit of the insured's policy with Commercial Union with the result that the tortfeasor's vehicle was an underinsured vehicle. The Commercial Union policy defined an "underinsured motor vehicle" as "a land motor vehicle . . . to which a bodily injury . . . policy applies *but its limit for bodily injury liability is less than the limit of liability for this coverage.*" *Id.* at 645. In *Filing* the plaintiff husband was driving his automobile with three family members as passengers when their vehicle was negligently struck by another vehicle. At the time of the accident, the other vehicle was insured by American Family Insurance Company with bodily injury liability coverage of $100,000 per person/$300,000 per accident. Plaintiffs' vehicle was insured by Commercial Union with underinsured motorist coverage in the amount of $300,000. Each plaintiff was an insured under the policy. The court of appeal reasoned:

> the maximum amount each insured could ever recover from American Family would

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW

5

> be the per person limit, which in this case is $100,000. Importantly, no individual person could ever recover the per accident limit of $300,000. With this understanding, an insured's objectively reasonable expectation is that the phrase "limit for bodily injury liability" means the per person limit of a tortfeasor's liability policy. Thus, individuals with a $300,000 UIM policy would expect UIM coverage if their claim is limited to $100,000 under the tortfeasor's policy.

*Id.* at 650.

Similar reasoning here would lead to the conclusion that a reasonable insured with American Hardware's single limit of $250,000 limit would expect underinsured motorist coverage if the carrier for the vehicle responsible for the accident had a "per person" limit of less than $250,000. That would be the situation in this case where the sum of the "per person" limits of the two liability policies covering Uresti's vehicle was $115,000. However, despite *Filing's* analysis, the court does not believe that an insured's objectively reasonable expectation would be that the "per person" limit would be compared with the single "per accident" limit.

In *Leetz v. Amica Mutual Insurance Company*, 839 P.2d 511 (1992), the court of appeals in Colorado held that a vehicle causing an accident with a vehicle insured by Amica Mutual was not an underinsured vehicle because Farmers Insurance, the liability carrier for that vehicle, paid out more than the "per accident" limits of the Leetz vehicle which was covered by Amica Mutual. Farmers' payments were made to Leetz and the three occupants of the Leetz vehicle, all of whom were insureds under the Amica Mutual policy covering the Leetz vehicle. The court of appeals held:

> Here, four people were injured or killed in the accident. Accordingly, we compare the $50,000 per accident liability limit under the Farmers policy to the $50,000 single limit for uninsured motorist under the Amica policy. Because the liability limit is not less than the uninsured motorist limit, the tortfeasor's vehicle was not underinsured. Thus, the heirs were not entitled to any underinsurance motorist benefits under the Amica policy.

*Id.* at 513. It further observed that "[o]ther jurisdictions which have similar uninsured motorist statutes and which have addressed this issue have also concluded that, when more than one person is injured, it is the per accident limit which must be used to determine whether underinsurance coverage applies." *Id.*

The *Leetz* court in its discussion stated:

> Because the liability limit is not less than the uninsured motorist limit, the tortfeasor's vehicle was not underinsured. Thus, the heirs were not entitled to any underinsurance

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW

6

motorist benefits under the Amica policy. *See State Farm Mutual Automobile Insurance Co. v. Messinger, 232 Cal. App. 3d 508, 283 Cal. Rptr. 493 (1991)* (because coverage was not triggered, plaintiffs were not entitled to collect underinsurance amount from insurer).

839 P.2d at 513. The cited California case, *State Farm Mutual Automobile Insurance Co. v. Messinger*, bolsters the conclusion that the Uresti vehicle did not constitute an underinsured vehicle. In *Messinger*,

> [t]he tortfeasor (Ballard) was insured for a limit of $300,000 for all injuries arising out of an accident. The Messingers had uninsured/underinsured limits of $100,000 for injuries to one person and $300,000 for all injuries arising out of an accident. By simply comparing Ballard's limits ($300,000) with the Messingers' limits ($300,000), it is clear that Ballard's car was not an underinsured motor vehicle as defined by the Insurance Code and the Messingers' insurance policy. Ballard's car was insured for an amount *equal* to the uninsured/underinsured coverage the Messingers carried, and therefore not "an amount *less* than the uninsured/ [underinsured] motorist limits carried" by the Messingers. . . . Accordingly, the Messingers' underinsurance coverage-drafted in language conforming to section 11580.2, subdivision (p)(2)-was never triggered and they were never entitled to collect *any* underinsurance amount from State Farm. . . .

232 Cal. App. 3d at 514 (emphasis in original).

Messingers' insurance policy defined an "underinsured motor vehicle" as a "land motor vehicle, the ownership, maintenance, or use of which is: . . . (1) Insured . . . for bodily injury liability at the time of accident, but (2) the limits of liability are less than the limits of liability of this coverage." *Id.* at 513-14. The language of the American Hardware policy is essentially the same: "An underinsured motor vehicle is a land motor vehicle . . . for which the sum of all liability . . . policies at the time of an 'accident' provides at least the amounts required by applicable law . . . but that sum is less than the Limit of Insurance for this coverage." As stated in *Messinger*

> The meaning of such words is clear. Underinsurance coverage does not apply unless the tortfeasor's vehicle is an underinsured motor vehicle. An underinsured motor vehicle, by definition, is a vehicle insured for an amount that is less than the uninsured/underinsured motorist limits carried by the injured person. Thus, if the tortfeasor is insured for an amount equal to or greater than the uninsured/underinsured limits of the injured person, that person never gets to collect any underinsurance coverage. This is the type of scenario we have in this case.

*Id.*; *see Elwood v. Aid Ins. Co.*, 880 F.2d 204, 207-208 (9th Cir.1989).

In the present case the Uresti vehicle was covered by insurance for an amount ($330,000) which is greater than the underinsured limits of the American Hardware policy ($250,000).

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW

7

Therefore, underinsurance coverage was not triggered.

The contention of Escamilla and Figueroa that the "per accident" limit should not be viewed as limiting coverage because there is no separate "per person" limit would require that the term "per accident" be ignored. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Bank of the West*, 2 Cal. 4th at 1265 (internal citations and quotations omitted). There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application.

In the context of the American Hardware policy as a whole and, in the circumstances of this case, the $250,000 underinsured limit can only be reasonably construed as a "per accident" limit. The box on the endorsement form for filling in the "LIMIT OF INSURANCE" says "'Each Accident.'" Law Decl. Ex. N at AH00120. Although the box is not filled in with a limit, underneath the box is the instruction "if no entry appears above, information required to complete this endorsement will be shown on the Declarations as applicable to this endorsement." *Id.* The applicable declarations page shows an entry of $250,000 ($1,000,000 on the policy before it was allegedly reduced at the insured's request) for the limit of uninsured (including underinsured) coverage. Although the box itself containing the limit does not say "per person " or "per accident," it is in the same column that provides the liability limits of $1,000,000 "per accident" for automobile liability. *Id.* at AH00086. Nowhere is there a reference to any limit other than a "per accident" limit.

The fact that the original limit of underinsured motorist coverage was the same as the automobile liability limit reinforces the conclusion that the limit is "per accident." It would be unusual for an insured to obtain higher limits for underinsured motorist coverage than for his or her own liability coverage.

**B. American Hardware's Underinsured "Per Accident" Motorist Limit Is Valid Despite the Lack of an Express "Per Person" Limit**

The American Hardware policy, however, does not expressly provide both a "per person" and "per accident" limit as Escamilla and Figueroa argue is required to meet the minimum requirements of section 11580.2. Therefore, since the American Hardware policy has only one limit,

that one limit, say Escamilla and Figueroa, must be considered a "per person" limit in order to comply with section 11580.2 and to be consistent with public policy that favors insurance coverage.

Defendants' argument goes too far. The fact that American Hardware's policy provides no express "per person" limit does not mean that the "per accident" limit should be turned into something it is not. American Hardware could not successfully claim that its policy had a "per person" limit of something less than $250,000 but the fact that it only has a "per accident" limit does not convert the limit from a "per accident" limit into a "per person" limit with no "per accident" limit.

Defendant Escamilla also argues that when he talked with his insurance agent about reducing the cost of his policy, the agent described the underinsured motorist coverage as having a "per incident" limitation and that he understood that to mean "per person." However, the subjective understanding of the insured does not assist in the interpretation of a policy – language should be construed to protect the *objectively* reasonable expectations of an insured. *See, e.g., Bank of the West*, 2 Cal. 4th at 1265. The alleged statement of the agent was not only made after the policy had been formed but an insurer would not have believed that an objectively reasonable insured would have understood "per incident" to mean "per person."

### C. Since the Vehicle Driven by Uresti Was Not an Underinsured Motor Vehicle, American Hardware's Underinsured Motorist Coverage Was Not Triggered

Since a comparison of American Hardware underinsured "per accident" limit shows that it is less than the "per accident" liability limits on the Uresti vehicle ($250,000 versus $330,000), American Hardware's underinsured motorist coverage has not been triggered.[2]

### III. JULIE FIGUEROA'S STANDING TO ALLEGE BAD FAITH

A claim for bad faith denial of insurance benefits stems from a tortious breach of the implied covenant of good faith and fair dealing. *Seretti v. Superior Nat. Ins. Co.*, 71 Cal. App. 4th 920, 925-31 (2002) (explaining cases). Because of the contractual nature of that duty, "an insurer's duty of good faith and fair dealing is owed solely to its insured and, perhaps, any express beneficiary of the

---

[2] Obviously, if the "per accident" limit of the American Hardware policy is determined to be $1,000,000, the coverage will be triggered.

insurance policy." *Id.* at 929 (quoting *Austero v. Nat'l Cas. Co.*, 62 Cal. App. 3d 511, 516-17 (1976)). Thus, even foreseeable third parties to the insurer-insured relationship lack standing to pursue a claim for bad faith because they lack privity with the insurer. *Id.* at 729-31. On the other hand, "strangers" to the insurance contract that fall within a category of an additional insured possess standing to sue for bad faith denial. *See, e.g., Cancino v. Farmers Ins. Group*, 80 Cal. App. 3d 335, 344-45 (1978) (person loading truck when hit was insured as one "in or upon" the truck); *Northwester Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal. App. 3d 1031, 1042 (1978) (permissive user of truck covered by "omnibus clause"). American Hardware essentially ignores the question of whether Figueroa is an "insured" under its policy, but as illustrated, it is necessary to determine if she was an "insured" to determine if she has standing to bring a claim based on a bad faith refusal to pay benefits.

The American Hardware policy defined four categories of people as "insureds." First, the policy provided that Escamilla was an insured. *See* Law Decl., Ex. N at AH00120. Because he was an individual doing business as Wilson's Tire Service (and not, for example, a corporation), "any 'family member'" was also an insured. *Id.* The parties do not appear to dispute that this provision made Matthew Escamilla an additional insured under the policy. This is not the basis, however, for Figueroa's claim to being an insured as it also appears undisputed that she was divorced from Escamilla and not living with him and Matthew and, therefore, not a family member under the definition of "family member" in the policy. *Id.* at AH00121.

Figueroa instead claims to be an insured pursuant to the fourth category of "anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another insured." *Id.* American Hardware argues that the phrase "another insured" suggests that one must already be an insured to be able to recover damages sustained by "another" insured. American Hardware's interpretation of the policy language seems inconsistent with how an objectively reasonable insured would read the policy. If one already was an insured under one of the other categories, there would be no reason for the policy to include a fourth category duplicating the scope of the existing ones. American Hardware's argument is also difficult to reconcile with the broad term "anyone" included at the beginning of the category. The term "anyone" also appears in the third category of "anyone

ORDER ON AMERICAN HARDWARE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
No. C-07-01545 RMW

10

else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto,'" i.e., any passenger. The use of "anyone" in the third category to cover effectively any passenger suggests that the term "anyone" is meant to be construed broadly. Matthew was an insured under the policy, and his mother, as his heir, is entitled to recover because of his death. Contrary to American Hardware's argument, the policy language appears to include Figueroa as an "insured" for the limited purpose of permitting her to recover for the death of her son Matthew, "another insured."

American Hardware argues that *Smith v. Royal Insurance Co. of America*, 186 Cal. App. 3d 239 (1986) suggests that Figueroa lacks standing. It is not applicable to the facts here. In *Smith*, the claimant's parents were killed in an accident with an uninsured motorist. 186 Cal. App. 3d at 241. The parents were not "insureds" under the claimant's policy. *Id.* at 241-42. Nevertheless, the claimant argued that section 11580.2(a) required that they be covered because the Cal. Ins. Code § 11580.2 requires all policies to insure "the insured" and "the insured's heirs or legal representative" for wrongful death resulting from an uninsured motorist. *Id.* at 242. The claimant argued that she was an insured under the policy, and that she sought to recover on a wrongful death claim based on the acts of an uninsured motorist. *Id.* The court disagreed with the claimant's construction of the statute, explaining that the statute "was intended to insure against physical injury to those named as insured in the statute or the insurance policy." *Id.* at 243. The court held that the insurance company "neither intended nor was required to provide coverage for wrongful death when neither the decedent nor the car in which he was riding was insured by [it]." *Id.*

However, in *Smith*, the decedents were not the insureds; their heir was. Here, Matthew Escamilla was the insured. This change appears instead to *trigger* section 11580.2(a)(1) and require that Matthew's heirs also be covered by the policy. Indeed, Figueroa argues that the purpose of the fourth category in the American Hardware policy is to comply with section 11580.2(a)(1), and that this context should inform the provision's interpretation.

It appears from the language of the policy and section 11580.2(a)(1) that Figueroa was an insured under the American Hardware policy. As an insured, she has standing to pursue a bad faith claim, even if she lacked any knowledge of the policy.

## IV. ORDER

For the foregoing reasons, the court grants summary adjudication that the American Hardware policy had a "per accident" limit and that if that limit was $250,000, the vehicle causing the accident was not an "underinsured vehicle." The court denies the motion as to American Hardware's claim that Figueroa lacks standing to sue for bad faith.

DATED: 9/30/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been e-mailed to:**

**Counsel for Plaintiff:**

Robert A. Ford                 ford@lbbslaw.com
Rene I. Gamboa             gamboa@lbbslaw.com
Kathleen Elizabeth Hegen    HEGEN@lbbslaw.com

**Counsel for Defendants:**

Robert Louis Mezzetti , II     rob@mezzettilaw.com
David Walter Wessel          dwessel@chdlawyers.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 9/30/09                             TER

                                                       **Chambers of Judge Whyte**